IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Carmella Parra Sklaney, | ) | |
| | ) | |
| Plaintiff, | ) | No.   11 C 1053 |
| | ) | |
| v. | ) | |
| | ) | |
| Coverall North America, Inc., previously | ) | |
| doing business as Coverall Cleaning | ) | |
| Concepts, now known as Coverall | ) | |
| Health-Based Cleaning System, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**
**(Civil Rights and Employment Discrimination)**

**Introduction**

1. Plaintiff Carmella Parra Sklaney seeks redress for national origin discrimination. This case is brought for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended.

**Jurisdiction**

2. Jurisdiction of this Court is provided by 28 U.S.C. §§ 1331 and 1343.

3. On November 25, 2005, Plaintiff timely filed a charge of national origin discrimination with the EEOC. (See attached.)

4. On November 18, 2010, Plaintiff received a Notice of Right To Sue. (See attached.)

5. Venue is proper in this judicial district because the Defendant resides here, and all of the events occurred here.

**The Parties**

6. Plaintiff Carmella Parra Sklaney ("Plaintiff") is an American of Mexican national origin.

7. Defendant is a corporation doing business in the Northern District of Illinois.

8. At the time of Plaintiff's employment, Defendant was doing business as Coverall Cleaning Concepts. Defendant is now doing business as Coverall Health-Based Cleaning System.

9. At all relevant times, Defendant has been continuously engaged in an industry affecting commerce and has employed more than 500 employees.

## Facts Upon Which Claims are Based

10. Defendant is one of the world's leading commercial cleaning franchising companies with a worldwide network of more than 90 Support Centers and 9,000 Franchise Owners, servicing nearly 50,000 customers in more than 90 metropolitan areas.

11. Plaintiff worked for Defendant as an Inside Sales Representative in the Chicago Regional Office from October 2003 until January 2006.

12. Plaintiff's language of national origin is Spanish, the primary language of Mexico.

13. Plaintiff was raised speaking Spanish with her father. Plaintiff's grandmother also lived with them; Plaintiff's grandmother spoke no English, only Spanish, so Plaintiff spoke to her grandmother only in Spanish.

14. When speaking to someone else who speaks both English and Spanish, Plaintiff frequently switches automatically between English and Spanish.

15. When she applied for employment with Defendant, Plaintiff checked "Hispanic" on Defendant's Affirmative Action Questionnaire. (See attached.)

16. From October 2003 until February 2005, Plaintiff was permitted to speak English and Spanish with customers and co-workers on Defendant's premises.

17. In 2004, Plaintiff told Chicago Regional Director Laura Bach that Plaintiff was of Mexican descent.

18. Starting in early February 2005, Defendant prohibited Plaintiff from speaking Spanish on Defendant's premises at all times.

19. On February 2, 2005 or February 9, 2005, Plaintiff and Franchise Development Trainer Mario Rodriguez were sitting next to each other, waiting for a Wednesday morning staff meeting to begin. Mr. Rodriguez is of Mexican national origin, and Spanish is his language of national origin. Mr. Rodriguez started to cough. In Spanish, Plaintiff asked Mr. Rodriguez if he had a sore throat, and if he needed a cough drop. Mr. Rodriguez replied in Spanish that he was fine. Chicago Regional Director Laura Bach, who was setting up chairs for the meeting, told Plaintiff and Mr. Rodriguez, "No, no. English only." Plaintiff explained that she and Mr. Rodriguez were discussing Mr. Rodriguez's cough, and Ms. Bach replied, "No Spanish, English only."

20. After the staff meeting, Ms. Bach approached Plaintiff and said that an employee had complained about Plaintiff and Mr. Rodriguez speaking Spanish at work. Ms. Bach told Plaintiff that the complainant had said, "This is America, and we should all speak English." Plaintiff told Ms. Bach that being prevented from speaking Spanish was a violation of Plaintiff's civil rights, that Plaintiff was of Mexican descent, and that Plaintiff was offended by the prohibition on speaking Spanish at work. Plaintiff asked Ms. Bach who had complained, but Ms. Bach refused to say. Ms. Bach stated, "Do not talk to Mario in Spanish, only English."

21. Later that day, Plaintiff met with Ms. Bach and Supervisor Barbara Bitar. Plaintiff complained to them that being prevented from speaking Spanish was a violation of her civil rights, and Plaintiff said she was hurt by the prohibition on speaking Spanish at work. Ms. Bach stated that Plaintiff was not permitted to speak Spanish in the workplace.

3

22. Fearing that she would lose her job if she spoke Spanish on Defendant's premises, Plaintiff stopped speaking Spanish on Defendant's premises.

23. Plaintiff, who was used to switching between English and Spanish, was forced to be constantly on guard to avoid uttering Spanish.

24. Plaintiff complained to Manager Mike Gumiela and Manager Alejandro Pereyra about the prohibition on speaking Spanish at work. Mr. Gumiela and Mr. Pereyra took no action.

25. Defendant also prohibited Supervisor Barbara Bitar from speaking Spanish on .Defendant's premises at all times. Ms. Bach told Ms Bitar that Ms. Bitar could not speak Spanish on Defendant's premises, because Ms. Bach did not understand what was being said. Ms. Bitar complained to Manager Mike Gumiela. Mr. Gumiela took no action.

26. On September 19, 2005, Ms. Bach told Plaintiff that Ms. Bach had heard from other employees that Plaintiff was planning to take legal action relating to the prohibition on speaking Spanish at work. Plaintiff replied that the prohibition on speaking Spanish violated her civil rights. Plaintiff asked Ms. Bach which employee had made the complaint about Plaintiff speaking Spanish at work. Ms. Bach replied that she had forgotten who had made the original complaint. Ms. Bach added that it was irrelevant who had made the original complaint about Plaintiff, because the original complainant was no longer employed by Defendant.

27. On September 20, 2005, Plaintiff made a confidential complaint in writing to Defendant's Human Resources Department about the prohibition on speaking Spanish at work. (See attached.) Human Resources never responded to Plaintiff's complaint, but one-and-a-half months later, on November 4, 2005, Defendant's Assistant General Counsel emailed Plaintiff regarding Plaintiff's complaint. When Plaintiff asked if any information she provided would

4

be kept confidential, the Assistant General Counsel ended all communication with Plaintiff. (See attached.)

28. In January 2006, Plaintiff resigned because of Defendant's prohibition on speaking Spanish at work. (See attached.)

## COUNT I
## (Title VII – National Origin Discrimination)

29. Paragraphs 1-28 are restated herein.

30. Defendant intentionally discriminated and retaliated against Plaintiff in violation of 42 U.S.C. § 2000e *et seq.*, as amended.

31. Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, and other consequential damages.

WHEREFORE Plaintiff respectfully requests:

    A. Compensatory damages;

    B. Punitive damages;

    C. Attorney's fees and costs; and

    D. Such other relief as law and justice allow.

Respectfully Submitted,

/s/ Kamran Memon
Plaintiff's Attorney

Kamran Memon
200 S. Michigan Ave.
Suite 1240
Chicago, IL 60604
(312) 961-2354